IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RUFFIN, G-60756,<br><br>    Petitioner,<br><br>vs.<br><br>SCOTT McEWEN, Acting Warden,<br><br>    Respondent. | No. C 11-0512 CRB (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

Pursuant to a plea agreement, petitioner Robert Ruffin entered pleas of guilty to a variety of charges related to two separate bank robberies in Santa Clara County Superior Court. He also admitted that he had suffered three prior "strike" felony convictions and two prior serious felony convictions. On March 27, 2009, the trial court sentenced petitioner in accordance with the plea agreement to a total term of 35 years to life in state prison.

Petitioner appealed and was assigned appellate counsel, who subsequently filed a brief under People v. Wende, 25 Cal. 3d 436 (1979), finding no arguable issues and requesting the California Court of Appeal to review the record independently. On February 19, 2010, the California Court of Appeal filed an opinion finding no arguable issues on appeal and affirming the judgment of the trial court. Petitioner did not seek review from the Supreme Court of California, but later sought habeas relief from the state courts. On August 10, 2011, the Supreme Court of California denied his final petition for a writ of habeas corpus.

Petitioner seeks federal habeas corpus relief under 28 U.S.C. § 2254 on the basis of five claims. Per orders filed on October 7, 2011 and January 6, 2012, the court found that the petition, liberally construed, stated arguably cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

> On the morning of November 20, 2006, two men wearing black ski masks entered the Washington Mutual Bank on Story Road in San Jose. At least one of the suspects was carrying a handgun. The two men attempted to obtain money from the bank tellers, but were foiled by bank security measures. One suspect hit a bank teller on the head during the robbery.
>
> The suspects then took purses from two women in the branch. One of the women became so fearful, she began experiencing chest pains and was transported to the hospital by ambulance.
>
> The suspects were observed fleeing the bank in a small car, which was later determined to have been stolen. After driving approximately one block, they switched cars and escaped.
>
> On the morning of November 21, 2006, San Jose police responded to a report of a bank robbery at a Citibank branch on Stevens Creek Boulevard. Two masked men had entered the bank and ordered everyone to the floor. They took money from the teller station, and took wallets and cell phones from customers. One of the robbers dragged another teller, who happened to be pregnant, across the floor from behind her desk. The suspects were seen entering a car driven by a third person. That car was abandoned and the three suspects entered a red Ford Taurus driven by a fourth suspect.
>
> That same day, a San Jose police officer located a stolen vehicle in the parking lot of a Motel 6 which matched the description of the vehicle used in the Citibank robbery. Surveillance of the vehicle led officers to two rooms at the motel, where they apprehended four suspects, including Ruffin. Officers discovered cell phones and cash linked to both robberies in the motel rooms.
>
> Ruffin told police that he had met the other suspects, whom he had known "for awhile," in Los Angeles a few days prior to the robberies and

2

had ridden to San Jose with them. He denied being involved with the robberies. However, when a police officer accused him of having dragged a pregnant woman from behind her desk during one of the robberies, Ruffin appeared genuinely concerned that someone was hurt, and wrote a letter of apology.

Two of the other suspects admitted their involvement and identified Ruffin as one of the two people who actually entered the banks to commit the robberies.

Ruffin and two codefendants were charged by information with a total of 24 separate offenses arising out of the November 20 and November 21, 2006 robberies. With respect to the November 20, 2006 incident, Ruffin was charged with three counts of attempted second degree robbery (Pen. Code, §§ 664, 211, 212.5, subd. (c); counts 1-3); two counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 4-5); nine counts of felony false imprisonment (§§ 236, 237; counts 6-14); and one count of theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a); count 15). In connection with the November 21, 2006 incident, Ruffin was charged with four counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 16, 18-20); one count of attempted second degree robbery (§§ 664, 211, 212.5, subd. (c); count 17); two counts of felony false imprisonment (§§ 236, 237; counts 21-22), one count of assault by force likely to produce great bodily injury (§ 245, subd. (a)(1); count 23); and one count of theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a); count 24).

In addition, the information alleged that Ruffin had three prior "strike" convictions (§§ 667, subds.(b)-(i), 1170.12) for robbery, conspiracy to commit bank robbery and armed bank robbery, as well as two serious felony priors (§ 667, subd. (a)) and one prison prior (§ 667.5, subd. (b)).

On July 6, 2007, Ruffin's section 995 motion to reduce the felony false imprisonment charges (counts 6-14) to misdemeanors based on lack of proof was denied.

One of Ruffin's codefendants, Bobby Lott, pleaded guilty without conditions in September 2008 and was listed as a witness in the prosecution's trial brief.

After numerous continuances, the case was called for jury trial on January 8, 2009. Following two days of in limine proceedings, Ruffin accepted a plea bargain agreement on January 13, 2009. In exchange for a "top-bottom" sentence of 35 years to life, Ruffin pleaded guilty to counts 1 through 14 and admitted the strike, serious felony and prison prior allegations. [(The prison prior allegation was later dismissed.)] Ruffin also agreed that he would admit personally aiding and abetting the charged crimes in counts 15 through 24, with a [People v. Harvey, 25 Cal. 3d 754 (1979)] waiver as to those counts, and those counts would be dismissed. In addition, Ruffin agreed to forego filing a [Peopen v. Superior Court (Romero), 13 Cal. 4th 497 (1996)] motion and agreed to give up any right

3

to appeal the agreed-upon sentence imposed.

On March 27, 2009, Ruffin was sentenced in accordance with the plea agreement to a term of 25 years to life on count 4, with two five-year enhancements for the serious felony priors, for a total term of 35 years to life. Concurrent 25 years to life sentences were imposed on counts 1 through 3 and 5 through 14, while counts 15 through 24 were dismissed. The court awarded Ruffin a total of 986 days of presentence credits, consisting of 858 days of actual custody and 128 days of conduct credits as limited by section 2933.1. A restitution fine of $10,000 was imposed (§ 1202.4, subd. (b)), and a parole revocation fine in the same amount was imposed and suspended (§ 1202.45). In addition, the court imposed a court security fee of $280 (§ 1465.8), a criminal justice administrative fee of $129.75, and a criminal conviction assessment totaling $420. Finally, the court ordered victim restitution in specified amounts.

At a postsentencing hearing on April 24, 2009, the court modified the victim restitution orders, directing Ruffin to pay the following amounts: $5,000 to Mary Williams; $4,312.34 to Citibank; $1,212.64 to Lourdes Rumohr; and $280 to Alberto Ortiz.

People v. Ruffin, No. H034273, 2010 WL 597192, at *1-3 (Cal. Ct. App. Feb. 19, 2010).

## DISCUSSION

A.   Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if

4

the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.  Claims & Analysis

Petitioner seeks federal habeas corpus relief under § 2254 on the basis of five claims: (1) the state courts improperly denied his state petition for a writ of habeas corpus, (2) his current sentence was improperly enhanced by an invalid

prior strike conviction because the conviction was based on a plea of no contest accepted without establishing a factual basis; (3) his current sentence was improperly enhanced by an invalid prior strike conviction because the conviction was based on a plea of no contest that was not voluntary and intelligent; (4) ineffective assistance of trial counsel for failing to challenge the prior strike conviction; and (5) ineffective assistance of counsel for failing to raise claims (2), (3) and (4) on appeal. The claims are without merit.

1. <u>Improper Denial of State Habeas Petition</u>

Petitioner contends in claim (1) that the state superior court violated his federal constitutional rights when it improperly denied his state habeas petition by failing to apply relevant state law. Petitioner's claim is not cognizable in federal habeas.

The Supreme Court repeatedly has held that federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. See <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861-62 (2011); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982). Petitioner's claim squarely falls within the rationale of this long-standing Supreme Court precedent. <u>See, e.g.</u>, <u>Little v. Crawford</u>, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier decisions does not provide ground for federal habeas relief).

2. <u>Improper Sentence Enhancement</u>

Petitioner contends in claims (2) and (3) that his current sentence was improperly enhanced by an invalid 1996 strike conviction in violation of his federal constitutional rights. Petitioner specifically argues that his 1996 plea of no contest is invalid because it was accepted by the Los Angeles County Superior Court without establishing a factual basis and because the plea was not voluntary

and intelligent. Petitioner's claims are not cognizable in federal habeas.

The Supreme Court has made clear that an expired conviction cannot be challenged in an attack upon the later sentence it was used to enhance. See Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001) (prior conviction cannot be challenged in a § 2254 petition); Daniels v. United States, 532 U.S. 374, 382-83 (2001) (prior conviction cannot be challenged in a § 2255 motion).

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Coss, 532 U.S. at 403-04 (citation omitted). The only exception to this rule is for a claim that the prior conviction was unconstitutional because there was a failure to appoint counsel in violation of the Sixth Amendment right to counsel as set forth in Gideon v. Wainwright, 372 U.S. 335 (1963). See Coss, 532 U.S. at 404; Daniels, 532 U.S. at 382. This is not such a case.

3.  Ineffective Assistance of Counsel

Petitioner contends in claim (4) that trial counsel was constitutionally ineffective for failing to challenge the validity of his 1996 prior strike conviction, and in claim (5) that appellate counsel was constitutionally ineffective for failing to raise the validity of the 1996 strike on appeal by raising claims (2), (3) and (4). The Supreme Court of California summarily denied both claims.

In order to prevail on a Sixth Amendment claim of ineffective assistance of counsel, petitioner must establish two things. Strickland v. Washington, 466 U.S. 668, 686 (1984). First, he must establish that counsel's performance was

7

deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Strickland standard also applies to claims of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Moormann v. Ryan, 628 F.3d 1101, 1106 (9th Cir. 2010). First, petitioner must establish that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at 1106. Second, petitioner must establish prejudice, which in this context means that he must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, petitioner would have prevailed in his appeal. Smith, 528 U.S. at 285-86; Moormann, 628 F.3d at 1106.

The Supreme Court of California's summary denial of petitioner's claims of ineffective assistance of trial and appellate counsel cannot be said to be an objectively unreasonable application of the Strickland standard. See 28 U.S.C. § 2254(d); Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (Strickland framework for analyzing ineffective assistance of counsel claims is considered "clearly established Federal law, as determined by the Supreme Court of the United States" for purposes of 28 U.S.C. § 2254(d) analysis). First, it cannot be said that either trial or appellate counsel was objectively unreasonable for not challenging/raising the validity of petitioner's 1996 prior strike conviction. There is no evidence in the record that counsel had any reason to believe that the prior conviction was invalid. After all, it was over ten years old and had never been

challenged. And, importantly, admitting the prior strike as part of the plea bargain made sense because it allowed petitioner to receive a much lighter sentence (35 years to life) than the potential sentence he could have received if he had gone to trial and been found guilty of all counts (724 years to life). Under the circumstances, trial and appellate counsel's conduct did not fall outside the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689 (court must indulge strong presumption that counsel's conduct falls within wide range of reasonable professional assistance). Second, it cannot be said that petitioner was prejudiced by counsel not challenging/raising the validity of petitioner's 1996 prior strike conviction. Even if counsel had successfully challenged/raised the validity of the 1996 prior strike, there is no reasonable probability that it would have affected the bargained-for sentence of 35 years to life or its appeal to petitioner. There were enough other counts and priors (including to other prior strikes) the prosecution could have used to make up for the loss of the 1996 prior and there was still a significant benefit petitioner would receive from the 35 years to life sentence. Under the circumstances, there is no reasonable probability that, had counsel challenged/raised the validity of the 1996 strike prior, petitioner would have turned down the plea bargain and gone to trial. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985) (in order to establish prejudice from counsel's advice to accept plea offer, petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a

9

certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  October 17, 2012

CHARLES R. BREYER
United States District Judge

10

G:\PRO-SE\CRB\HC.11\Ruffin, R.11-0512.denial.wpd

11